**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
DONOVAN DRAYTON,

                                    Plaintiff,

         -against-

THE CITY OF NEW YORK, DETECTIVE ROBERTO
TORIBIO, DETECTIVE BRIAN VOLPI, DETECTIVE
EDWIN ESTRADA, SGT. MARK SINATRA and JOHN and
JANE DOES (1-5) (employees of the New York City Police
Department not yet known),

                                    Defendants.
------------------------------------------------------------------------X

Civil Action No.:
1:17-cv-7091(RRM)(RLM)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff DONOVAN DRAYTON, by and through his attorney, ABE GEORGE, ESQ., of the LAW OFFICES OF ABE GEORGE, P.C., complaining of the Defendants herein, upon information and belief, respectfully shows to this Court, and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action stemming from a false arrest and malicious prosecution of Plaintiff, in which Plaintiff seeks relief for Defendant Officers' violations of Plaintiff's rights secured by 42 U.S.C. § 1983, by the United States Constitution, including its Fourth, and Fourteenth Amendments, and by the laws and Constitution of the State of New York.

2. Plaintiffs seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

5. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), in that the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

## JURY TRIAL DEMANDED

7. Plaintiffs demand a trial by jury on each and every one of their claims as pleaded herein.

## PARTIES

8. At all times relevant to this action, Plaintiff DONOVAN DRAYTON is and was a resident of Queens, New York.

9. Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as Defendant CITY OF NEW YORK's agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant CITY OF NEW YORK was at all times relevant herein the public employer of DETECTIVE ROBERTO TORIBIO (hereinafter "TORIBIO"), DETECTIVE

BRIAN VOLPI (hereinafter "VOLPI"), DETECTIVE EDWIN ESTRADA (hereinafter "ESTRADA"), SGT. MARK SINATRA (hereinafter "SINATRA"), and JOHN and JANE DOE (1-5), police officers of the New York City Police Department, the identity, rank, and number of whom is presently unknown (hereinafter "JOHN and JANE DOE (1-5)").

10. Defendants TORIBIO, VOLPI, ESTRADA, SINATRA and JOHN and JANE DOE (1-5) are and were at all times relevant herein duly appointed and acting officers, servants, employees, and agents of the New York City Police Department (hereinafter "NYPD"), a municipal agency of Defendant CITY OF NEW YORK.

11. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the NYPD, in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by the CITY OF NEW YORK and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

12. This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## STATEMENT OF FACTS

13. On or about February 6, 2017, at approximately 7:00pm, near the vicinity of South Road and 164th Street, in the County of Queens, Plaintiff was en route to a meeting with his parole officer, and Plaintiff had parked his car in the vicinity of the Parole office.

3

14. At the aforementioned time, place and occurrence, as Plaintiff had just exited his car, defendant NYPD police officers VOLPI, ESTRADA and/or JOHN AND JANE DOES (1-5), approached Plaintiff with firearms drawn, and stopped and questioned Plaintiff demanding Plaintiff's identification.

15. After running a check on Defendant's identification and finding out that Plaintiff was on parole and on the watchlist of various NYPD criminal databases, defendant NYPD police officers VOLPI, ESTRADA, and/or JOHN AND JANE DOES (1-5) placed Plaintiff under arrest, handcuffing him and placing him in their vehicle. The police next commenced a search of Plaintiff's vehicle which turned up negative results.

16. Plaintiff was lawfully present and was not engaged in any unlawful activity at the aforementioned time, place and occurrence.

17. Plaintiff was stopped without reasonable suspicion of criminal activity and arrested without probable cause to believe that Plaintiff had committed any crime.

18. Plaintiff never possessed any crack or cocaine at the aforementioned time, place and occurrence.

19. Police officers were hoping that a search of Plaintiff's person or car would turn up with contraband.

20. Plaintiff's only crime was that he was a prior convicted felon that happened to be on parole and on the watchlist of the NYPD.

21. Upon information and belief, in order to justify Plaintiff's arrest, Defendant NYPD police officers VOLPI, ESTRADA, and/or JOHN AND JANE DOES (1-5), conspired with each other and others including arresting officer TORIBIO and supervisor Sgt. SINATRA, who were

4

both not on scene, to justify their unlawful stop and subsequent arrest of Donovan Drayton by falsely claiming that Plaintiff Drayton possessed crack/cocaine.

22. On or about February 6, 2017, Defendant TORIBIO, with the explicit and tacit approval of defendants VOLPI, ESTRADA and supervisor SINATRA, knowingly and intentionally, falsely swore to a criminal court complaint that alleged that officers saw Plaintiff Drayton with a "twist containing a quantity of cocaine" in Plaintiff's right hand and that said cocaine was ultimately recovered from Plaintiff's right pant pocket.

23. In the aforesaid criminal complaint Plaintiff was charged with Criminal Possession of a Controlled Substance in the Third, Fifth, and Seventh Degrees.

24. After being detained for just under 24 hours, Plaintiff was arraigned on February 7, 2017, on the aforementioned criminal court complaint under Queens Docket # CR-004964-17QN. The prosecution asked that bail be set despite defendant's objections and CJA's recommendation to release Plaintiff on his own recognizance and bail was set for Plaintiff in the amount of $75,000.00.

25. Due to financial difficulties in raising bail money, defendant was incarcerated with the New York City Department of Corrections from on or about February 6, 2017, to on or about February 26, 2017.

26. On or about February 26, 2017, Plaintiff's family had posted bail for him and Plaintiff was released. However, as a result of the aforementioned arrest, Plaintiff a parolee, was violated on parole and was forced to spend an additional thirty (30) additional days of incarceration during the pendency of the aforementioned criminal case.

27. On or about July 27, 2017, upon a motion of Plaintiff's attorney, the Court dismissed the criminal court action against the Plaintiff, dismissing all charges.

### **FIRST CLAIM FOR RELIEF: FALSE ARREST**
42 U.S.C. § 1983 and Fourth and Fourteenth Amendments
By Plaintiff Against All Defendants

28.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

29.     Defendant NYPD police officers TORIBIO, VOLPI, ESTRADA, SINATRA, and/or JOHN AND JANE DOES (1-5), acting under color of state law, in stopping Plaintiff without reasonable suspicion and later arresting Plaintiff without probable cause, and further confining Plaintiff who was conscious of said imprisonment against Plaintiff's will, and without any privilege to do so as is required by the Fourth and Fourteenth Amendments, are liable for violating 42 U.S.C. § 1983, which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

30.     As a direct and proximate result of Defendants' above described unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

### **SECOND CLAIM FOR RELIEF: MALICIOUS PROSECUTION**
42 U.S.C. § 1983 and Fourth Amendment
By Plaintiff Against All Defendants

31.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32.     By their conduct, as described herein, and acting under color of state law, Defendant police officers TORIBIO, VOLPI, ESTRADA, SINATRA and/or JOHN AND JANE DOES (1-5), are liable to Plaintiff under 42 U.S.C. § 1983 for the violation, of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

33. Due to Defendant police officers TORIBIO, VOLPI, ESTRADA, SINATRA and/or JOHN AND JANE DOES (1-5) false allegations against Plaintiff, a criminal proceeding was commenced against the Plaintiff. The criminal proceeding was terminated on or about July 27, 2017 in Plaintiff's favor. There was no probable cause for Plaintiff's arrest and defendant police officers' actions in intentionally trying to "frame" Plaintiff with narcotics demonstrates that Plaintiff's prosecution was driven by malice.

34. As a result of Defendant's conduct Plaintiff was incarcerated for almost 2 months, being deprived of his liberty.

35. As a direct and proximate result of Defendants' above described unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

### THIRD CLAIM: FAILURE TO TRAIN
42 U.S.C § 1983
By Plaintiff Against Defendant CITY OF NEW YORK

36. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

37. The NYPD's training program was not adequate to train the defendant officers TORIBIO, VOLPI, ESTRADA, SINATRA and JOHN AND JANE DOE (1-5) to properly handle usual and recurring situations, particularly in terms of proper procedures to identify those perpetrating crimes.

38. The NYPD and the City of New York were deliberately indifferent to the need to train its officers adequately.

7

39. Specifically, Plaintiff's arrest was a direct and obvious consequence of Defendant CITY OF NEW YORK's failure to adequately train defendant officers TORIBIO, VOLPI, ESTRADA, SINATRA JOHN AND JANE DOE (1-5) on probable cause, differentiating between criminal behavior and innocuous conduct, along with the intricacies of the Fourth Amendment and police-citizen street encounters.

40. The failure to provide proper training was the cause of the Plaintiff's deprivation of Plaintiff's due process rights.

41. In the deprivation of Plaintiff's freedom through their wrongful arrest, Plaintiff was harmed in this malicious prosecution and false arrest, and the NYPD's failure to adequately train its officers was a substantial factor in causing that harm.

**FOURTH CLAIM: MUNICIPAL LIABILITY**
42 U.S.C § 1983
By Plaintiff Against Defendant CITY OF NEW YORK

42. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

43. Defendant CITY OF NEW YORK, acting through the NYPD, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, lawful search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, and obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

44. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

    a. <u>Schoolcraft v. City of New York</u>, 10-CV-6005 (RWS) (S.D.N.Y) (police officer who exposed a precinct's policies and practices of illegal quotas for the issuance of summonses and arrests, falsifying evidence and suborning perjury alleges he was arrested and committed to a psychiatric facility in retaliation for exposing these practices and customs);

    b. <u>People v. Pagan</u>, 6416-2008 (Sup. Ct. N.Y. Co.) (officer swears out a false complaint and is convicted of falsifying police records);

    c. <u>Lin v. City of New York</u>, 10-CV-1936 (PGG) (S.D.N.Y) (officers arrest a person lawfully photographing an arrest of a bicyclist in Times Square and swear out criminal complaints that is contradicted by video evidence);

    d. <u>Colon v. City of New York</u>, 9-CV-0008 (JBW)(E.D.N.Y) (in an Order dated November 29, 2009 denying the City's motion to dismiss, wherein the police officers at issue were prosecuted for falsifying evidence, the Honorable Jack B. Weinstein wrote: 'Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some

evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.'

  e. People v. Arbeedy, 6314-2008 (Sup. Ct. Kings Co.) (NYPD narcotics detective found guilty planting drugs on two innocent civilians; former undercover NYPD narcotics officer, Steve Anderson, testified that fellow narcotics officers routinely maintained a stash of narcotics to plant on innocent civilians in order to help those officers meet arrest quotas; Mr. Anderson testified concerning the NYPD's practice of "attaching bodies" to the narcotics to make baseless arrests stating: "It was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators. Seeing it so much, it's almost like you have no emotion with it. The mentality was that they attach bodies to it, they're going to be out of jail tomorrow anyway, and nothing is going to happen to them anyway. That kind of came to me and I accepted it –being around so long, and being an undercover";

  f. Bryant v. City of New York, 22011/2007 (Sup. Ct. Kings Co.) (Jury declares that NYPD officers acted pursuant to a City policy regarding the number of arrests officers were expected to make that violated plaintiff's constitutional rights and contributed to her arrest);

  g. Williams v. City of New York, 06-CV-6601 (NGG) (E.D.N.Y.) (officers arrest plaintiff during a "vertical patrol" of a public housing project despite evidence that he had a legitimate reason to be on premises);

  h. MacNamara v. City of New York, 04-CV-9216 (RJS)(JCF) (S.D.N.Y) (evidence of perjured sworn statements systematically provided by

officers to attempt to cover up or justify unlawful mass arrests of approximately 800 people has been and continues to be developed in the consolidated litigation arising out of the 2004 Republican National Convention);

      i. <u>McMillan v. City of New York</u>, 04-cv-3990 (FB)(RML) (E.D.N.Y.) (officers fabricated evidence against an African-American man in Kings County and initiated drug charges against him, despite an absence of a quantum of suspicion);

      j. <u>Nonneman v. City of New York</u>, 04-CV-10131 (JSR)(AJP) (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youths);

      k. <u>Richardson v. City of New York</u>, 02-CV-3651 (JG)(CLP) (E.D.N.Y.) (officers fabricated evidence including knowingly false sworn complaints, against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

      l. <u>White-Ruiz v. City of New York</u>, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y.) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

      m. Exclusive: Muslim Woman Settles Racial Profiling Lawsuit with NYC but says Officials Refused to Meet with her to Discuss Police Abuse (Daily News, available at nydailynews.com/new-york/exclusive-woman-settles-racial-profiling-suit-nyc-article-1.2327196): After settling for over $37,000 after Mrs.

                Huq was arrested for Obstructing Pedestrian Traffic, police officials refused to change policy or meet to discuss additional training and supervision of officers;

                n. Two individuals were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzales and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped. When Gonzalez took out her camera to begin filming, they were arrested. DNA Info (May 21, 2013), http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filiming-stop; and

                o. On June 20, 2013, NYPD officers arrested a photographer taking photographs of a Bushwick police station when he refused to tell the officers why he was taking the photographs. Shawn Randall Thomas was given two summonses for Disorderly conduct. DNA Info (June 20, 2013), http://www.dnainfo.com/new-york/201306t20/bushwick/photographer-arrested-taking-pictures-of-police-station-house-bushwick).

45.     Defendant CITY OF NEW YORK maintained the above-described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, Defendant CITY OF NEW YORK acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

46.     The actions of Defendants, acting under color of State law, deprived Plaintiff of Plaintiff's due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms,

custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

47. By these actions, defendants have deprived Plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff demands judgment against the Defendants individually and jointly and prays for relief as follows:

(a) That Plaintiff be compensated for the violation of Plaintiff's constitutional rights, pain, suffering, mental anguish, and humiliation; and

(b) That Plaintiff be awarded punitive damages against the Defendants; and

(c) Award attorneys' fees pursuant to 42 U.S.C. § 1988;

(d) Award costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988

(e) For such other further and different relief as to the Court may deem just and proper.

DATED:   March 11, 2018
         New York, New York

                                        LAW OFFICES OF ABE GEORGE, P.C.
                                         _/s/_____
                                        By: Abe George, Esq.
                                        44 Wall Street, 2nd Floor
                                        New York, NY 10005
                                        (P) 212-498-9803
                                        (F) 646-558-7533
                                        E-mail: abe@abegeorge.lawyer

13