UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DONOVAN DRAYTON,

        Plaintiff,

- against -

THE CITY OF NEW YORK, *et al.*,

        Defendants.
------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

**MEMORANDUM AND ORDER**
17-CV-7091 (RRM) (RLM)

    Plaintiff Donovan Drayton brings this action against the City of New York, Sergeant Mark Sinatra, Detective Brian Volpi, Detective Roberto Toribio, and Detective Edwin Estrada, alleging several civil rights violations. Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

    The following facts and drawn from the parties' Local Rule 56.1 Statements of Material Facts, as well as from evidence submitted by the parties in connection with the motion for summary judgment.

### I.    Drayton's Arrest

    The following facts are undisputed. This action arises from Drayton's arrest on February 6, 2017. On that day, Detectives Volpi and Estrada were assigned to narcotics enforcement. (Defendant's Rule 56.1 Statement ("Defs.' SOF") (Doc. No. 36) ¶ 1; Plaintiff's Rule 56.1 Statement ("Pl.'s SOF") (Doc. No. 38) ¶ 1.) Detectives Volpi and Estrada drove in an unmarked police car around 164th Street between South Road and 107th Avenue, an area known by the Detectives for drug activity. (Defs.' SOF ¶¶ 2–10; Pl.'s SOF ¶¶ 2–10.) The Detectives observed

Drayton sitting inside a parked car as they drove on 164th Street heading in the direction of South Road. (Defs.' SOF ¶¶ 12–13; Pl.'s SOF ¶¶ 12–13.) Detective Volpi first saw Drayton through the windshield of the Detectives' car and then again through the Detectives' driver's side window, which was partially lowered. (Defs.' SOF ¶¶ 15–17; Pl.'s SOF ¶¶ 15–17.) Drayton's car was parked across the street from the Detectives' car. (Defs.' SOF ¶¶ 18–19; Pl.'s SOF ¶¶ 18–19.) Drayton saw the Detectives' car drive past him but did not see either Detective. (Defs.' SOF ¶¶ 13, 20; Pl.'s SOF ¶¶ 13, 20.)

The parties' accounts of what happened next differ significantly. Detectives Volpi and Estrada testified that when they first saw Drayton in his car, he was counting money and speaking on a cell phone. (Defs.' SOF ¶ 21.) According to Drayton, he was neither counting money nor speaking on a cell phone, but rather taking his ID out of his wallet. (Pl.'s SOF ¶ 21.) Both Detectives claim to have observed Drayton holding something plastic: Detective Estrada described it as a piece of plastic, Detective Volpi described it as a "plastic twist" and was able to observe the "fray." (Defs.' SOF ¶¶ 22–23.) According to Detective Volpi, a plastic twist with crack cocaine is essentially a sandwich bag with crack cocaine on the bottom of the bag where the bag is "twisted really tight towards the bottom tied up, and then the edge kind of frays up." (Ex. A to Defs.' SOF (Doc. No. 36-1) ("Volpi Dep.") at 98:13–16.) Drayton on the other hand avers that he never had a piece of plastic. (Pl.'s SOF ¶¶ 22–23.)

The Detectives made a "u-turn" to bring their car parallel to Drayton's car and up to Drayton's back bumper. (Defs.' SOF ¶ 26.) Detective Volpi testified that as he exited the car, he saw Drayton exit his car and put a plastic twist inside his right pants pocket. (Defs.' SOF ¶ 27; Volpi Dep. at 40:16–21.) Detective Volpi testified that while he did not see the narcotics directly in Drayton's hand, he believed based on "the packaging and the area" that there "was

2

some sort of narcotics going in his pocket." (Defs.' SOF ¶ 28; Volpi Dep. at 41:2–7.) Detective Estrada testified that he saw Drayton exit his car and place his cupped hand into his pocket, but Detective Estrada did not see the object in Drayton's hand. (Defs.' SOF ¶ 30.) Drayton agrees that the Detectives made a "u-turn" but he vehemently disputes that the Detectives could have seen him with a plastic twist or put anything into his pocket, and Drayton disputes the inferences made by Detectives as a result of what they claim to have seen. (Pl.'s SOF ¶¶ 25–30; Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Aff.") (Doc. No. 43) ¶¶ 4, 7.)

According to Detective Volpi, he searched Drayton's pocket and recovered what he suspected to be a large quantity of crack cocaine. (Defs.' SOF ¶¶ 31, 36.) Detective Volpi showed Detective Estrada what he recovered from Drayton and then the Defectives arrested Drayton. (Defs.' SOF ¶ 33–34; Ex. B to Defs.' SOF ("Estrada Dep.") (Doc. No. 36-2) at 122:8–12, 135:2–7). Drayton does not dispute that he was arrested for possession of crack cocaine, but Drayton testified and stated in his sworn affidavit that he never had any crack cocaine in his pocket. (Pl.'s SOF ¶ 34; Pl.'s Aff. ¶ 4.)

Detective Volpi vouchered the money and plastic twist allegedly recovered from Drayton. (Defs.' SOF ¶¶ 39–40.) The NYPD Police Lab tested the substance in the plastic twist and determined it was cocaine and had a 73.5% purity level and weighed approximately 3.00 grams. (Defs.' SOF ¶ 41; Ex. J. to Defs.' SOF ("Lab Report") (Doc. No. 36-10) at 1.)

## II.    Criminal Case Against Drayton

Detective Robert Toribio was the designated arresting officer for the arrests effectuated by the team of officers assigned to narcotics enforcement operations on February 6, 2017, the date of Drayton's arrest. (Defs.' SOF ¶¶ 1–2, 37.) Detective Toribio was not on the scene when

3

Detectives Volpi and Estrada arrested Drayton. (Defs.' SOF ¶ 37.) Detective Toribio assisted in the preparation of the criminal complaint and signed it. (Defendants' Response to Plaintiff's Rule 56.1 Statement ("Defs.' Resp. to Pl.'s SOF") (Doc. No. 41) ¶ 121.) Detective Toribio based the information that he provided to the Assistant District Attorney (the "ADA") for the criminal complaint on his conversation with Detective Volpi. (Defs.' SOF ¶¶ 42–43; Pl.'s SOF ¶ 122; Defs.' Resp. to Pl.'s SOF ¶ 121.)

In apparent contrast with Detective Volpi's testimony that he recovered the cocaine-filled plastic twist from Drayton's pocket (Defs.' SOF ¶ 31.), the criminal complaint states that Detective Toribio was "informed by Officer Volpi that he recovered a twist containing a quantity of cocaine from the defendant's right hand as the defendant was placing it into his pant pocket." (Defs.' SOF ¶ 44; Ex. 7 to Abe George Declaration in Opposition to Defendants' Motion for Summary Judgment ("Criminal Complaint") (Doc. No. 39-7) at 2.) Detective Toribio attributes any discrepancy between the location of the recovered plastic twist in Detective Volpi's testimony and in the criminal complaint to possibly misremembering the conversation he had with Detective Volpi. (Defs.' SOF ¶ 45; Ex. 2 to Abe George Declaration in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Volpi Dep.") (Doc. No. 39-2) at 62:24–63:25.)

On March 10, 2017, less than five weeks after Drayton's arrest and prior to any pre-trial suppression hearings, the ADA prosecuting Drayton's case, Melissa Medilien, decided to dismiss the case against Drayton. (Defs.' Resp. to Pl.'s SOF ¶¶ 48–49.) However, ADA Medilien did not ultimately dismiss Drayton's criminal case until July 27, 2017 due to scheduling difficulties with Drayton's attorneys. (Defs.' Resp. to Pl.'s SOF ¶¶ 50–51.) ADA Medilien dismissed the case on her own motion, not because of "a 30.30 issue." (Ex. L to Defs.' SOF (Doc. No. 36-12)

("Medilien Dep.") at 55:7–16.)  ADA Medilien explained that she dismissed the case at least in part because the Detectives' "approach and the search were problematic" because "Drayton was searched without [the Detectives] knowing what item was placed into his pocket."  (Medilien Dep. at 47:13–50:19.)

### III.   The Instant Civil Action

In December of 2017, Drayton filed the instant action against the City of New York (the "City"), Detective Roberto Toribio, Police Officer Brian Volpe [sic], and John and Jane Does (1-5) (employees of the New York City Police Department not yet known).  (Complaint (Doc. No. 1) ("Compl.").)  At the core of Drayton's complaint are allegations that the non-City defendants arrested and prosecuted him for possession of crack cocaine that the Detectives planted on him.  (*Id.*)  The complaint alleges four causes of action, (1) § 1983 false arrest claim against all defendants, (2) § 1983 malicious prosecution claim against all defendants, (3) § 1983 failure to train claim against the City, and (4) § 1983 municipal liability against the City.  (*Id.*)   The third and fourth causes of action against the City allege that the City failed to adequately train the defendant detectives in violation of the Fourth Amendment and that the City maintained policies, practices, or customs that led the non-City defendants to violate Drayton's rights.  (*Id.*)  On March 11, 2018, Drayton Amended his Complaint adding Detective Estrada and Sergeant Mark Sinatra as defendants.  (Amended Complaint (Doc. No. 10) ("Am. Compl.").)  Pursuant to a stipulation between the parties, the third and fourth causes of action were bifurcated and discovery on those claims was stayed pending resolution of the underlying constitutional violations.  (Stipulation dated March 15, 2018 (Doc. No. 11).)  Discovery moved forward on all claims against individual defendants and the parties took deposition testimony, including the

following witnesses: (i) Detective Volpi, (ii) Detective Estrada, (iii) Detective Toribio, (iv) ADA Medilien, and (v) Drayton.  (S*ee, e.g.*, Exs. A, C, E, G, L to Defs.' SOF.)

On May 3, 2019, defendants moved for summary judgment on all claims, excluding the bifurcated claims.  (Defs.' Motion for Summary Judgment (Doc. No. 35) ("Defs.' Mot.").)  Defendants argue that they are entitled to summary judgment on Drayton's false arrest and malicious prosecution claims because there is no disputed issue of fact as to whether defendants had probable cause to arrest Drayton and Drayton cannot create a disputed issue of fact through his own self-serving testimony.  (*Id.*)  Defendants argue that even if they did not have probable cause to arrest Drayton, they are entitled to qualified immunity.  (*Id.*)   Defendants also argue that the false arrest claim against Sergeant Sinatra, Detective Toribio, and Detective Estrada should be dismissed because they lacked personal involvement in Drayton's arrest and that the malicious prosecution claim against Sergeant Sinatra and Detective Estrada should be dismissed for the same reason.  (*Id.*)

In response, Drayton argues that defendants are not entitled to summary judgment because there is a disputed issue of fact as to whether defendants had probable cause to arrest Drayton in light of Drayton's testimony that he did not have crack cocaine on him the day that he was arrested.  (Pl.'s Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 40).)   Drayton also argues that defendants are not entitled to qualified immunity because the detectives did not have probable cause to arrest him.  (*Id.*)  Finally, Drayton argues that Detectives Toribio and Estrada had sufficient personal involvement in Drayton's arrest to maintain a false arrest claim against them.  (*Id.*)  Drayton consented to dismissal of Sergeant Sinatra from this suit and dismissal of the malicious prosecution claim against Detective Estrada.  (*Id.* at 8, 19 n.5.)

6

# DISCUSSION

## I. Standard of Review

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). A court may grant judgment on the pleadings only when, after "accept[ing] all factual allegations in the complaint as true and draw[ing] all reasonable inferences in favor of the [plaintiff] ... the complaint [does not] contain sufficient factual matter ... to state a claim to relief that is plausible on its face." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "On a motion for summary judgment, the court must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Dufort v. City of New York*, 874 F.3d 338, 347 (2d Cir. 2017) (internal quotations omitted).

## II. False Arrest

Federal claims pursuant to § 1983 for false arrest "rest on an individual's Fourth Amendment right to be 'free from unreasonable seizures, including arrest without probable cause,' and are 'substantially the same as a claim for false arrest under New York law.'" *Wong v. Yoo*, 649 F.Supp.2d 34, 58 (E.D.N.Y. 2009) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). To prevail on a claim for false arrest, a plaintiff must plead that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the

7

plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)). A confinement is privileged where there is probable cause to arrest. *Shaheed v. City of New York*, 287 F. Supp. 3d 438, 448 (S.D.N.Y. 2018), *reconsideration denied*, No. 14-CV-7424 (PAE), 2018 WL 3455406 (S.D.N.Y. July 18, 2018). The existence of probable cause is a complete defense to a cause of action for false arrest. *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994). A claim for false arrest will fail where, regardless of whether the first three prongs are satisfied, a defendant establishes that probable cause existed. *Wong v. Yoo*, 649 F. Supp. 2d at 58.

In this case, there is no dispute that (1) the Detectives intentionally confined plaintiff when they handcuffed him and placed him under arrest, (2) Drayton was conscious of the confinement and (3) Drayton did not consent to it. Accordingly, the only remaining question is whether the Detectives had probable cause to arrest Drayton as a matter law, which would render the confinement privileged under the fourth prong of the test.

    a. **Probable Cause**

To determine whether the police had probable cause, the Court must ask whether "such facts and circumstances [existed] as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Colon v. City of New York*, 60 N.Y.2d 78 (1983). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852. Summary judgment on a plaintiff's § 1983 claim should be denied where there is a "genuine issue of fact as to whether the controlled substance was planted on the plaintiff and a genuine issue of fact existed as to the probable cause to arrest plaintiff." *Hill v. Melvin*, No. 05-

8

CV-6645 (AJP), 2006 WL 1749520, at *11 (S.D.N.Y. June 27, 2006), *aff'd*, 323 F. App'x 61 (2d Cir. 2009) (alterations omitted) (internal quotations omitted).  The Second Circuit has held that "a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact." *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019).  In *Bellamy*, the Second Circuit denied summary judgment finding that a material issue of fact existed as to whether the Detective fabricated an inculpatory statement that Bellamy allegedly made based on Bellamy's "consistent and uncomplicated" testimony that "he never made the statement." *Id.*

Detectives Volpi and Estrada argue that they had probable cause to arrest Drayton.  According to the Detectives, they both observed Drayton holding something plastic (specifically what appeared to Detective Volpi to be a plastic twist, which in his experience is a vessel for holding crack cocaine).  After making a "u-turn" to bring the Detectives' car parallel to Drayton's, Detective Volpi saw Drayton on the phone, counting money, and holding a plastic twist.  Detective Volpi further testifies that he saw Drayton exit his car and put the plastic twist in his pants pocket.  Detective Estrada also claims to have seen Drayton exit his car and put his hand in his pocket, however Detective Estrada did not see whether Drayton had anything in his hand as it was going into his pocket.  Detective Volpi searched Drayton's pocket and recovered three grams of crack cocaine from a plastic twist, at which point the Detectives placed Drayton under arrest for possession of crack cocaine.  Detective Toribio was the assigned arresting officer and signed the arrest paperwork and criminal complaint.

Drayton presents a completely different version of the events.  He has consistently denied carrying any type of narcotic on the day of his arrest.  He believes that the crack cocaine that the Detectives claim to have recovered from him must have been planted on him.  He has submitted his own sworn deposition testimony and an affidavit stating the same.  Defendants urge this

9

Court to find Drayton's allegations of planted evidence self-serving and unsupported, but such a credibility determination must be left for the jury. *See Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (finding that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .")). Even though the Court is skeptical of Drayton's account of the events of his arrest and his theory of how the Detectives allegedly effectuated this scheme, Drayton has raised a triable issue of fact that must be resolved by the jury.

### b. Personal Involvement

"It is well settled in the Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); s*ee Rodriguez v. City of New York*, No. 8-CV-04173 (RRM), 2012 WL 1059415, at *9 (E.D.N.Y. Mar. 28, 2012) (rejecting plaintiff's argument that officer's signature on arrest documentation as the "reviewing" or "approving" officer establishes personal involvement in false arrest claim).

*Detective Toribio.* The only evidence of Detective Toribio's involvement in the investigation of Drayton and his arrest is his signature on the arrest documents. (Pl.'s Mem. at 17.) There is no dispute that Detective Toribio was absent from the scene when Drayton was arrested and apart from Detective Toribio's signature on Drayton's arrest paperwork, Detective Toribio was uninvolved in Drayton's arrest. *Id.* at 5. There are no disputed issues of fact as to Detective Toribio's involvement in Drayton's arrest, and signing arrest paperwork fails to

establish personal involvement. Thus, Detective Toribio is dismissed as a defendant in Drayton's false arrest claim.

*Detective Estrada.* Defendants argue that there is no triable issue of fact as to Detective Estrada's personal involvement in Drayton's arrest and that Detective Estrada's presence during the arrest is insufficient to sustain a false arrest claim against him. Personal involvement may be shown by intentional participation in conduct constituting a violation of a victim's constitutional right. *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). Personal involvement may also be shown by an officer's failure to intervene to protect a constitutional right. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Accepting all the facts in light most favorable to Drayton, there is a material issue of fact as to whether Detective Estrada personally participated in the conduct resulting in Drayton's deprivation of rights or failed to intervene to protect Drayton's constitutional rights from Detective Volpi. Accordingly, the motion of defendant Detective Estrada for summary judgment on plaintiff's false arrest claim is denied.

### III. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *Fulton v. Robinson*, 589 F.3d 188, 195 (2d Cir. 2002)). New York law places "a heavy burden on malicious prosecution plaintiffs, requiring that they establish four elements: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000) (citation omitted). Actual malice under New York law

11

"means only that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), *as amended* (May 21, 1996) (internal quotations omitted). When a plaintiff is prosecuted without probable cause actual malice can be inferred. *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010); *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("A lack of probable cause generally creates an inference of malice."). At summary judgment, plaintiff is entitled to rely on his own testimony to establish his malicious prosecution claim. *Rentas v. Ruffin*, 816 F.3d 214, 221–22 (2d Cir. 2016).

Detectives Volpi and Toribio argue that they are entitled to summary judgment on Drayton's malicious prosecution claim because probable cause existed to arrest and charge Drayton for (a) Criminal Possession of a Controlled Substance in the Third Degree; (b) Criminal Possession of a Controlled Substance in the Fifth Degree; and (c) Criminal Possession of a Controlled Substance in the Seventh Degree. However, that argument fails. As discussed above, there are material issues of fact as to the issue of probable cause. As such, summary judgment is denied as to Dayton's malicious prosecution claim against Detectives Volpi and Toribio.

### IV. Qualified Immunity

Defendants argue that even if they are not entitled to summary judgment on the merits of Drayton's false arrest and malicious prosecution claims, summary judgment should be granted in their favor because they are shielded by qualified immunity. (Defs.' Memorandum of Law in Support of the Defendants' Motion for Summary Judgment (Doc. No. 37) ("Defs.' Mot.") at 23–26.) On summary judgment, it is defendants' burden to establish their entitlement to qualified immunity. *Sloley v. VanBramer*, 945 F.3d 30, 46 (2d Cir. 2019). A police officer is entitled to

qualified immunity if the officer can establish that there was arguable probable cause to arrest. *Escalera v. Lunn*, 361 F.3d 737, 734 (2d Cir. 2004) (internal quotations omitted). "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010). For the purposes of qualified immunity, courts look to "the information possessed by the officer at the time of the arrest" to determine if an officer's conduct is "objectively reasonable" but courts do "not consider the subjective intent, motives, or beliefs of the officer." *Id.* (internal quotations omitted).

      Here, the material facts leading up to Drayton's arrest are in dispute. It cannot be determined as a matter of law that there was any degree of probable cause – "arguable" or otherwise. *See Felmine v. City of New York*, No. 9-CV-3768 (CBA) (JO), 2011 WL 4543268, at *10 (E.D.N.Y. Sept. 29, 2011) (rejecting claim of entitlement to qualified immunity where "most of the material facts leading up to the arrest are in dispute" and declining to conclude as matter of law that officers' actions were objectively reasonable). Drayton's version of the facts is that the crack cocaine that was recovered from him was planted. Fabrication of evidence violates a clearly established constitutional right. *Gomez*, 2017 WL 1034690, at *8 (finding officer defendants not entitled to defense of qualified immunity). On those facts, defendants cannot establish that it would have been objectively reasonable to arrest Drayton for possession of crack cocaine. Therefore, the defense of qualified immunity is inappropriate at this stage.

      Detective Estrada argues that he is entitled to qualified immunity on Drayton's false arrest claim on the separate basis that "the facts and circumstances that gave rise to Plaintiff's

13

arrest were primarily supported by Detective Volpi's observation of Plaintiff possessing a plastic twist that contained crack cocaine." (Defs.' Mot. at 25.) The Court need not address Sergeant Sinatra and Detective Toribio's assertion of qualified immunity on Drayton's false arrest claim because the Court dismissed Drayton's false arrest claim against those individuals. Detective Estrada is not entitled to qualified immunity based on his reliance on Detective Volpi's observations. Detective Estrada was admittedly present at the scene and claims to have seen Drayton holding plastic and counting money in his car and then placing his cupped hand into his pocket. *Cf. Askins v. City of New York*, No. 10-CV-2230 (CM), 2012 WL 12884363, at \*6 (S.D.N.Y. Feb. 14, 2012), *aff'd in part*, *vacated in part*, *remanded sub nom. Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013) (finding officer who was "not present for the initial search and had no reason to know of its illegality" was entitled to qualified immunity). In *Askins*, the trial court's finding of qualified immunity with respect to the officer who was not present for the initial search was not appealed, but the Second Circuit noted the basis for the trial court's qualified immunity ruling, that the officer "had no prearrest participation in the facts." *Askins v. Doe No. 1*, 727 F.3d 248, 251–52 (2d Cir. 2013). Here, Detective Estrada was present when Drayton was stopped and searched and had prearrest participation in the facts. At this stage, Detective Estrada is not entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment, (Doc. No. 35), is granted in part and denied in part. The following claims are dismissed with prejudice: all claims against Sergeant Sinatra; Drayton's false arrest claim against Detective Toribio; Drayton's malicious prosecution claim against Detective Estrada. Summary judgment is denied in all other respects.

This action is re-committed to the assigned magistrate judge for all remaining pretrial proceedings, including settlement discussions as appropriate.

SO ORDERED.

Dated: Brooklyn, New York
       May 20, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge