UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
  DONOVAN DRAYTON,             :
                                      :
                Plaintiff,      :
                                        :   17-cv-7091 (BMC)
        - against -       :
                                        :   **MEMORANDUM DECISION AND**
  THE CITY OF NEW YORK, et al.,   :   **ORDER**
                                        :
                Defendants.   :
                                        :
-------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff brought this 42 U.S.C. § 1983 action against police officers Edwin Estrada and

Brian Volpi, seeking damages for his alleged false arrest and malicious prosecution for

possession of crack cocaine.[1]  The jury found defendants liable for false arrest, but not for

malicious prosecution.  After lengthy deliberations, the jury awarded a judgment of $22,000 in

compensatory damages and $10,000 in punitive damages.

      Defendants move for judgment as a matter of law, a new trial, or remittitur.  They argue

that the jury necessarily rejected plaintiff's argument that defendants planted drugs on him, else

it would not have found against him on the malicious prosecution claim.  They also assert that

they are entitled to qualified immunity, and that the damage awards were excessive.  For the

reasons that follow, defendants' motion is granted in part and denied in part.

---

[1] Other defendants and claims were dismissed in pretrial proceedings.

## TRIAL RECORD

### I.    Plaintiff's Testimony

Plaintiff testified that, immediately prior to his arrest, he was sitting in his parked vehicle, preparing to walk to a nearby meeting with his parole officer.  So that he did not have to worry about triggering the metal detector at the parole office, he decided to "take everything out of [his] pockets and go in with just [his] identification."  He testified that he put his possessions, including "some money, some credit cards, [and his] phone" in the "center console" of his car, pending his return from the parole office.  He was clear that he only removed items from his pants pockets, and that, in his view, his movements would have been obstructed by the car doors such that outsiders would not have been able to observe what he was doing.

In the middle of emptying his pockets, plaintiff recalled seeing a minivan slowly creep by him.  He concluded that it was a police vehicle.  Upon seeing the vehicle, plaintiff got out of the car.  Defendants then approached him, and plaintiff told defendants that he was going to a parole appointment.  Only after this did defendants pat and frisk him, taking his ID.  Defendants then 'huddl[ed]" together for a few minutes before handcuffing plaintiff.  After approximately 30 minutes, during which time his vehicle was searched, defendants brought him back to the precinct.

Roughly 24 hours after he was taken into police custody, plaintiff was arraigned.  As he was unable to make bail, he spent 22 days incarcerated at Riker's Island.  Plaintiff testified that he suffered no physical injuries, nor has he sought medical attention for any psychological injuries resulting from his arrest.

Throughout his testimony, plaintiff was clear that at no point was he in possession of any narcotics.  Instead, he theorized that defendants framed him.

## II.    Defendants' Testimony

Defendants repeatedly denied framing plaintiff.  Both police officers testified that they decided to stop plaintiff because they believed he had drugs on him.  They testified that, in their view, it was only after they found narcotics on him that they placed him under arrest.

On the evening of plaintiff's arrest, defendants testified that they were patrolling on a narcotics operation in a minivan when they saw plaintiff parked in his car in a high-crime area. Both testified that they saw him counting money and holding a "plastic twist," *i.e.*, a small soft plastic container with a twist-tie that is often used in drug transactions.   Upon viewing the twist and plaintiff's actions in taking things from his pockets, and in light of this occurring in a high crime area, defendants concluded that plaintiff had narcotics on him.  Based on this conclusion, defendants stopped plaintiff, and immediately found narcotics.  Indeed, "right after the crack was recovered from his pocket", plaintiff was "handcuffed immediately."

## III.    Jury Verdict

The jury found for plaintiff on his claim of false arrest and against him on his claim of malicious prosecution.  On the false arrest claim, the jury awarded plaintiff $22,000 in compensatory damages ($11,000 against each defendant) and $10,000 in punitive damages ($5,000 against each defendant).

## DISCUSSION

## I.    Motion for Judgment as a Matter of Law

In evaluating a motion for judgment as a matter of law, a court must draw all reasonable inferences in favor of the non-moving party.  See Zellner v. Summerlin, 494 F.3d 344, 370 (2d Cir. 2007) (citation omitted).  The court "may not make credibility determinations or weigh the evidence," because those are "jury functions, not those of a judge."  Id.  Accordingly, a court may grant a motion for judgment as a matter of law "only if it can conclude that, with credibility

assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." Id. at 370-71. This "high bar" may be met when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or "there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." Lavin-McEleney v. Marist Coll., 239 F.3d 476, 479-80 (2d Cir. 2001). A "movant's burden in securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict." Cross v. N.Y. City Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005).

Defendants argue that plaintiff's arrest was proper as a matter of law because: (1) plaintiff's claims were based on his testimony that he had no drugs, and that defendants planted drugs on him; (2) the jury necessarily rejected plaintiff's testimony by finding against plaintiff on the malicious prosecution claim; and (3) defendants observed plaintiff in a high crime area counting money and holding a plastic twist that is a common form of packaging for narcotics.

First, defendants' argument is based on a false syllogism. That the jury rejected plaintiff's malicious prosecution claim does not necessarily mean that they rejected his argument that the drugs were planted on his person. Defendants are careful not to argue that the jury's verdict was inconsistent, and they recognize that "there was a plausible scenario" in which the jury could have accepted plaintiff's false arrest claim while rejecting his malicious prosecution claim. As demonstrated by the record at trial, the jury could have concluded that plaintiff simply failed to prove that defendants initiated or continued a criminal proceeding against him – a required element of his malicious prosecution claim – because defendants did not sign the criminal court complaint that initiated the proceedings against plaintiff or otherwise testify in any

4

proceedings against him.[2]  See Manganiello v. City of New York, 612 F.3d 149, 163 (2d Cir. 2010) ("To initiate a prosecution, a defendant must do more than report the crime or give testimony.  He must play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.") (internal quotations and citation omitted)).

Second, defendants' request for judgment as a matter of law wholly ignores plaintiff's testimony presenting an alternative version of events that led to his arrest.  According to plaintiff, even if he was actually in possession of drugs or paraphernalia, the officers could not have seen what he was holding because their view was obstructed by his car door.  Whether probable cause exists depends on whether the officers knew that a crime was being committed at the time of the arrest, not whether a speculative hunch was later confirmed to be true.  See Zellner, 494 F.3d at 368 ("Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.").  In other words, the jury could have concluded that the officers lied or were mistaken in testifying that they observed a plastic twist prior to the arrest,[3] even if plaintiff also

---

[2] Trial Tr., Feb. 22, 2022, 349:10–24 (Court's instruction:  "A defendant may be said to have initiated the criminal prosecution if he directed, encouraged, advised or required a prosecutor to prosecute, or if he gave the prosecutor, directly or through the filing of a felony or misdemeanor complaint, information that the defendant knew to be false, or if he withheld information that a reasonable person would realize might affect the prosecutor's determination of whether to prosecute, including fabrication of evidence.  A defendant can't be said to have commenced a criminal proceeding, however, simply because he fairly and truthfully disclosed to the prosecutor all matters within his knowledge that a reasonable person would believe would be important to the question of the plaintiff's guilt or innocence.").

[3] In fact, defendants recognize that the District Attorney dismissed the charges against plaintiff precisely because the defendant officers did not observe the content of the plastic twist and plaintiff would therefore have a legal basis to challenge the stop.

lied in denying that he had drugs on him and asserting that the officers planted the drugs.[4] There is nothing wrong with the jury so concluding. The jury was given the standard instructions that allowed it to reach this result – that it had to consider each claim individually, and in doing so, it could pick and choose those portions of a witness's testimony that it believed, and reject those that it did not.[5]

In sum, the jury's verdict on the false arrest claim is supported by sufficient evidence. Based on the trial record as described above, a plausible version of events emerges: the jury concluded that defendants lacked probable cause for the initial arrest, even if they later discovered that plaintiff was indeed in possession of narcotics.

## II.   Qualified Immunity

Where actual probable cause does not exist, an officer may be entitled to qualified immunity on a § 1983 false arrest claim if his actions were objectively reasonable or if "arguable probable cause" existed at the time of the arrest. See Figueroa v. Mazza, 825 F.3d 89, 100 (2d Cir. 2016). A defendant has the burden of proving the affirmative defense of qualified immunity. See Gomez v. Toledo, 446 U.S. 635, 640-41 (1980). When the facts underlying a claim of qualified immunity are disputed, it is a defendant's responsibility to request special interrogatories which, if resolved in his favor, would warrant qualified immunity. See Milfort v. Prevete, 3 F. Supp. 3d 14, 20 (E.D.N.Y. 2014). If a defendant does not make this request, he is "not entitled to have the court, in lieu of the jury, make the needed factual finding." Zellner, 494 F.3d at 368. Indeed, the resulting lack of sufficient factual findings may, on its own, preclude a

---

[4] Defendants have never argued that the initial encounter between the officers and plaintiff was a Terry-stop, not an arrest, see Grice v. McVeigh, 873 F.3d 162, 166–67 (2d Cir. 2017), and the Court therefore has not considered that argument.

[5] Trial Tr., Feb. 22, 2022, 339:4–9 (Court's instruction: "The law doesn't require you to accept all the evidence I admit. In deciding what evidence you're going to accept, you have to make your own evaluation of the testimony given by each of the witnesses and decide how much weight you want to give that testimony.").

court from making the legal determination of whether a defendant is entitled to qualified immunity. See Kerman v. City of New York, 374 F.3d 93, 120 (2d Cir. 2004) (reversing judgment as a matter of law because defendant had failed to ask that the jury be given interrogatories specific enough to resolve the material factual disputes); see also Ellis v. La Vecchia, 567 F. Supp. 2d 601, 609 (S.D.N.Y. 2008) ("[B]ecause Defendant failed to request special interrogatories going to the factual issues relating to Plaintiff's malicious prosecution claim, the record is insufficient to permit the Court to make a finding in Defendant's favor on the qualified immunity issue as a matter of law under Rule 50.").

Once the jury's verdict is properly understood, defendants' claim of qualified immunity falls away. According to the jury, the officers did not find drugs on plaintiff until after his arrest, and, therefore, there was no probable cause for his arrest. As suggested above, there are many cases where qualified immunity can shield defendants from a claim of false arrest. See, e.g., DuBois v. Cunningham, No. 21-cv-923, 2022 WL 2186956, at *3 (2d Cir. June 17, 2022) (instructing district court to grant summary judgment to defendant entitled to qualified immunity on false arrest claim). But this is not one of them. Any reasonable officer would know that the mere fact that a person is in a high crime area on his way to see his parole officer – and that is all defendants knew, viewing the jury verdict in the light most favorable to plaintiff – is insufficient to constitute probable cause. See, e.g., United States v. Freeman, 735 F.3d 92, 101-02 (2d Cir. 2013) ("the general label 'high crime area' is not a substitute" for a more in-depth analysis of the facts constituting probable cause).

Additionally, the jury's determination to award punitive damages makes defendants' assertion of qualified immunity "seem especially hollow." Adedeji v. Hoder, 935 F. Supp. 2d 557, 571 (E.D.N.Y. 2013) (quoting Robertson v. Sullivan, No. 07-cv-1416, 2010 WL 1930658,

at *4 (E.D.N.Y. May 12, 2010)).  By imposing punitive damages, the jury found that there was

nothing arguably reasonable about defendants' conduct until they found drugs on him after his

arrest.

### III.    Rule 59 Motion

In the alternative, defendants also seek a reduction of the jury's award of both

compensatory and punitive damages.  Under Rule 59, a court "may, on motion, grant a new trial

on all or some of the issues . . . after a jury trial, for any reason for which a new trial has

heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. Rule 59(a)(1)(A).

There are four bases upon which a new trial may be awarded, including, as here, where

defendants argue that the "damages are excessive."  Welch v. United Parcel Serv., Inc., 871 F.

Supp. 2d 164, 174 (E.D.N.Y. 2012) (citation omitted).

As an alternative to granting a new trial, a district court may "enter a conditional order of

remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new

trial."  Kirsch, 148 F.3d at 165.  The Second Circuit has held that a district court has the

discretion to invoke this rule in at least two circumstances:

> (1) where the court can identify an error that caused the jury to include in the
> verdict a quantifiable amount that should be stricken, . . . and (2) more generally,
> where the award is "intrinsically excessive" in the sense of being greater than the
> amount a reasonable jury could have awarded, although the surplus cannot be
> ascribed to a particular, quantifiable error.

Id. (quoting Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326, 337 (2d Cir.

1993)).

In instances where there is no discrete error, the Second Circuit has "generally held that a

jury's damage award may not be set aside as excessive unless 'the award is so high as to shock

the judicial conscience and constitute a denial of justice.'"  Id. (quoting O'Neill v. Krzeminski,

839 F.2d 9, 13 (2d Cir. 1988)).  Importantly, in determining such motions, "a court should rarely

disturb a jury's evaluation of a witness's credibility."  DLC Mgmt. Corp. v. Town of Hyde Park,

163 F.3d 124, 134 (2d Cir. 1998) (citations omitted).

     "An individual subjected to a false arrest is entitled to two types of compensatory

damages: (1) for loss of liberty and (2) for physical and emotional distress."  Thomas v. Kelly,

903 F. Supp. 2d 237, 262 (S.D.N.Y. 2012).  The first category compensates for denial of free

movement and harm to dignity, see Gardner v. Federated Dep't Stores, Inc., 907 F.2d 1348, 1353

(2d Cir. 1990), and the second for actual injuries.

     Defendants argue that "[t]here is simply no logical or legal basis for awarding an

individual $22,000 for the compensable damages at issue."  Defendants postulate that the jury

arrived at this number because it awarded plaintiff $1,000 for each of the 22 days he was

incarcerated.  This seems quite plausible although we do not know because defendants did not

ask for a special verdict.

     Nevertheless, there is some merit to defendants' argument.  Because the reconciliation of

the false arrest and malicious prosecution findings show that defendants did not find drugs on

plaintiff until after they arrested him, plaintiff was not wrongfully in custody for 22 days.  He

was wrongfully in custody for somewhere between 3 and 30 minutes.  From the point at which

the officers found the drugs, it was fully reasonable for them to detain him, and the sole period of

unlawful detention was thus very brief.  See Townes v. City of New York, 176 F.3d 138, 149 (2d

Cir. 1999) ("[Defendant's] only possible damage claim would be limited to the brief invasion of

privacy related to the seizure and initial search of his person.").  Nor does the brief period of

improper detention render the next 22 days improper, as the "fruit of the poisonous tree" doctrine

does not apply in civil cases under § 1983.  See id. at 146 ("To extend the [fruit of the poisonous

tree] doctrine to § 1983 actions would impermissibly recast the relevant proximate cause inquiry to one of taint and attenuation.").

If the jury used some other benchmark, rather than 22 days, to get to $22,000, that would be an awful lot of money for such a brief detention. The cases do not support it. For short periods of confinement, New York cases uphold awards of up to $10,000, even without proof of actual damages. See, e.g., Hallenbeck v. City of Albany, 99 A.D.2d 639, 472 N.Y.S.2d 187 (3rd Dep't 1984) ($10,000 for three hours); Woodard v. City of Albany, 81 A.D.2d 947, 439 N.Y.S.2d 701 (3rd Dep't 1981) ($7,500 for five hours); Guion v. Associated Dry Goods Corp., 56 A.D.2d 798, 393 N.Y.S.2d 8 (1st Dep't 1977) ($10,000 for three hours); see also Mason v. City of New York, 949 F. Supp. 1068, 1075-76 (S.D.N.Y. 1996) (ordering a remittitur amount of $10,000 where the plaintiff, who was in custody for two hours, "suffered no physical injuries at the hands of the Port Authority [police] or while in its facility"). As one court observed recently, it "appears that plaintiffs have been awarded anywhere from about $1,500 to $35,000 per hour [as adjusted for inflation] of unlawful detention and/or a combination of hours of unlawful detention and physical and emotional injuries." Francis v. City of New York, No. 15-cv-7997, 2019 WL 8918743, at *7 (S.D.N.Y. Nov. 12, 2019). And "[w]hen a plaintiff has suffered no physical injury and has not consulted any doctors for physical or emotional injuries, the awards fall on the lower end of that range." Id. at *8.

Given the brief detention before the officers found drugs, coupled with the lack of any physical injuries or emotional harm during this period that caused him to seek out medical care, an award at the lower end of the range is appropriate. See Lovitch v. Lovitch, No. 11-cv-2536, 2015 WL 1047807, at *9 (S.D.N.Y. Mar. 10, 2015) (court awarded $10,000 to plaintiff who was arrested and detained for a short period of time and suffered no physical injuries). This Court

finds that $10,000 is the "maximum amount" of compensatory damages that would not be excessive.  See Martinez v. The Port Auth. of New York & New Jersey, 445 F.3d 158, 160 (2d Cir. 2006).

When a district court finds that a verdict is excessive, it may order "a new trial limited to damages" or it may "condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount.'"  Lee, 101 F.3d at 808; see also Vasbinder v. Scott, 976 F.2d 118, 122 (2d Cir. 1992).  Plaintiff is therefore given the choice of a new trial as to damages or accepting a reduced compensatory damages award in the amount of $10,000.

## IV.   Punitive Damages

"Unlike compensatory damages, which must be awarded to compensate a plaintiff for his or her loss, punitive damages are discretionary and may be awarded where the trier of fact finds that such an award serves the purpose of punishment or deterrence."  Colon v. City of New York, No. 09-cv-0008, 2012 WL 691544, at *15 (E.D.N.Y. Feb. 9, 2012) (citations omitted).  "Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  Lee v. Edwards, 101 F.3d 805, 808 (2d Cir. 1996) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  "[T]o be entitled to an award of punitive damages, a claimant must show a 'positive element of conscious wrongdoing.'"  New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 121 (2d Cir. 2006) (quoting Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 538 (1999)).

Defendants assert that the conduct at issue here – "arresting someone for possession of narcotics without sufficient probable cause even though it was later learned that the individual did in fact possess narcotics" – cannot demonstrate the requisite intent for punitive damages in a § 1983 action, and therefore vacatur of the award is appropriate.  The Court agrees that there is

11

no evidence in the record of evil motive or malicious intent, but there is sufficient evidence to support a finding that the defendants acted with reckless or callous indifference to plaintiff's right to be free from arrest without probable cause.  The Court therefore declines to "disturb [the] jury's evaluation of a witness's credibility," and will instead address the appropriateness of remittitur.  DLC Mgmt. Corp., 163 F.3d at 134; see Matthews v. City of New York, No. 02-cv-715, 2006 WL 842392, at *11 (E.D.N.Y. Mar. 27, 2006) (denying motion to vacate jury award because jury "might have found, and was entitled to find," that arrest was done with callous disregard or indifference to the plaintiff's rights).

"Awards of punitive damages are by nature speculative, arbitrary approximations," and "[n]o objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct."  Payne v. Jones, 711 F.3d 85, 93 (2d Cir. 2013).  "Nor is there any formula to determine the dollar amount needed to effectuate deterrence."  Id.  "[C]ourts bear the responsibility to ensure that judgments as to punitive damages conform, insofar as reasonably practicable, to the prevailing norms of the legal system and are not excessive."  Stampf v. Long Island R.R. Co., 761 F.3d 192, 209 (2d Cir. 2014).

A district court may adjust a punitive damage award when the amount is so high as to "shock the judicial conscience and constitute a denial of justice."  Id. at 97 (citation omitted).  In making this determination, a court weighs the "(1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages, and (3) criminal and civil penalties imposed by the state's law for the misconduct in question."  Jennings v. Yurkiw, 18 F.4th 383, 390 (2d Cir. 2021).  A court also "compare[s] the award to rulings on awards in other cases."  Id.

Courts have found that the first consideration, reprehensibility, is "perhaps the most important indicium of the reasonableness of a punitive damages award." Payne, 711 F.3d at 101 (quoting BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996)). "This guidepost is particularly important and useful because punitive damages are intended to punish, and the severity of punishment, as in the case of criminal punishments, should vary with the degree of the reprehensibility of the conduct being punished." Id. To determine the degree of reprehensibility, courts consider "whether the [defendant] engaged in violent conduct; acted with malice or deceit; [or] engaged in repeated acts of misconduct." Milfort, 3 F. Supp. 3d at 24-25.

Here, the most that could be said about the reprehensibility of defendants' actions is that they acted with callous or reckless indifference to plaintiff's rights. At no point did plaintiff testify that defendants acted violently towards him, and nothing suggests that they acted with intentional malice. Still, the Second Circuit has held that punitive damages are available in a § 1983 case to punish or deter reckless or callous conduct – and this "positive element of conscious wrongdoing" can support a finding that defendants' conduct was reprehensible enough to support relatively modest award of putative damages. See Meyers, 442 F.3d at 121.

In assessing the second "guidepost" – the relationship of the punitive damages to the compensatory damages – a court considers whether the ratio of punitive damages to compensatory damages is reasonable. Payne, 711 F.3d at 101. Here, the ratio of punitive damages ($10,000) to compensatory damages ($10,000 as remitted) is not so extreme as to be unreasonable.

The third factor requires a court to consider what criminal or civil penalties could be imposed for the misconduct. Gore, 517 U.S. at 583 (1996). "When penalties for comparable misconduct are much slighter than a punitive damages award, it may be said that the tortfeasor

lacked 'fair notice' that the wrongful conduct could entail a substantial punitive award." <u>Lee</u>, 101 F.3d at 811.  The most likely criminal charge that defendants could have faced for falsely arresting plaintiff would be unlawful imprisonment in the second degree for "restrain[ing] another person." <u>See</u> N.Y. Penal Law § 135.05.  Unlawful imprisonment is a class A misdemeanor under New York law, punishable by a one-year sentence and/or a $1000 fine. N.Y. Penal Law § 70.15(1); N.Y. Penal Law § 80.05.  Although this potential punishment is not especially severe, it affords fair notice.  Moreover, defendants' police training gave them notice of the gravity of official misconduct and abuse of their authority as law enforcement officers.

Reviewing a punitive award for excessiveness is also a "task [that] requires comparison with awards approved in similar cases." <u>Mathie v. Fries</u>, 121 F.3d 808, 817 (2d Cir. 1997).  In other false arrest cases that did not involve violence or intentionally malicious conduct, courts have awarded between $5,000 and $10,000 in punitive damages.  <u>See</u> <u>Milfort</u>, 3 F. Supp. 3d at 26 (punitive award of $5,000 appropriate where there was no physical harm and plaintiff was "held in custody for the relatively short time of one and a half hours"); <u>see also</u> <u>Cabral v. City of New York</u>, No. 12-cv-4659, 2015 WL 4750675, at *9 (S.D.N.Y. Aug. 11, 2015) ($10,000) <u>Sulkowska v. City of New York</u>, 129 F. Supp. 2d 274, 310 (S.D.N.Y. 2001) ($7,500).

Considering all three factors and the applicable case law, I cannot say that the jury's punitive damages award – $5,000 against each defendant – "is so high as to shock the judicial conscience and constitute a denial of justice." <u>Stampf</u>, 761 F.3d at 209.  The Court therefore declines to remit the putative damages award.

## CONCLUSION

Defendants' motion for judgment as a matter of law is DENIED, and their motion for remittitur is GRANTED to the extent discussed in this decision.  Plaintiff shall advise

the Court within 10 days whether he accepts the Court's proposed remittur or wishes to

proceed to a new trial on damages only.


**SO ORDERED.**

Digitally signed by Brian
M. Cogan

U.S.D.J.


Dated: Brooklyn, New York
November 14, 2022